Mark GOLDMAN and Isidore Traschen

v.

ALLYN & BACON, INC.

Civ. A. No. 77–498–MC.

United States District Court,
D. Massachusetts.

Dec. 28, 1979.

Philip A. Mason, Mason & Martin, Boston, Mass., for plaintiffs.

Julian Soshnick, Kaplan, Soshnick, Greenglatt & Goodman, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

McNAUGHT, District Judge.

### Introduction

This action came on to be heard on plaintiffs' motion for summary judgment and defendant's motion to dismiss.

This is a breach of contract action brought by two authors, Professors Goldman and Traschen, against Allyn & Bacon, publishers. The plaintiffs allege that Allyn & Bacon had engaged them to produce a revised, second edition of their drama anthology but later repudiated that contract. After careful consideration, the court finds that there are no genuine issues of material fact, and after applying the law of New York, finds that there was no anticipatory breach on the part of the defendant. Accordingly, it is hereby ordered that the plaintiffs' motion for summary judgment is denied and that the defendant's motion to dismiss, which is treated as a motion for summary judgment, is allowed.

### Background

The following facts are undisputed:

On March 24, 1965, the plaintiffs entered into a publishing contract with Allyn &

**964**

Bacon (Complaint, Ex. A) for the publication and marketing of a drama anthology. In 1968 an anthology was produced. The 1965 contract provided that the authors would revise the work at the publisher's request and that the provisions of the contract (Agreement) would apply to any such revision. In 1972, Allyn & Bacon engaged plaintiffs to produce a revised, second edition. A final manuscript was never produced by the plaintiffs.

The plaintiffs assert, however, that they had substantially performed on the contract by having selected the plays, by having obtained permission from copyright owners, and by having provided editorial comment. The assembly of the manuscript and its submission, they argue, were only technical acts to be performed. (Complaint, ¶s 12, 22.)

In addition, plaintiffs claim that Allyn & Bacon had interfered and forestalled submission of the manuscript, and that it had repudiated their contract as evidenced by two letters from Allyn & Bacon discouraging the authors from going forward with the revision.

In a letter dated April 19, 1974, Mr. Frank Ruggirello, Associate Editor of the College Book Division of Allyn & Bacon, wrote Professor Traschen, informing him that:

(1) Assuming the manuscript is accepted for publication, it would not be ready until the fall of 1976. And,

(2) The management at Allyn & Bacon decided "to phase out of the field of English as quickly as possible." In further suggesting that the authors may wish to consider placing the manuscript with another publisher, Mr. Ruggirello stated:

Of course, we fully intend to fulfill our contractual commitments to publish contracted titles and agreed-to revisions.

Should you wish to pursue the "other publisher" tact, we would, of course,

under the circumstances not stand in your way.

(Complaint, Ex. E.)

In a subsequent letter dated April 12, 1975, to Professor Goldman, Mr. Gary Folven of Allyn & Bacon explained how the publisher was winding down its involvement with the English field.

Frankly, by the time your book would be published a year or so from now, we would have little or no image left as a publisher of college textbooks in English. [T]here would virtually be no money in our budget to promote and advertise the book.

In sum, from a business and financial standpoint, we are simply not in a position to launch your revision. . . . I think both you and I will agree that in light of the work and care you have put into this project, the book deserves more than the "vanity press" type treatment which would inevitably result if we became its publisher.

(Complaint, Ex. F.)

*Issues of Law*

Both parties agreed at the hearing that all that is in dispute is the proper legal interpretation of the two letters. At the hearing, it was also clear that the plaintiffs and defendant agreed as to the basic principles of the law of anticipatory breach under New York Law (which applies here under the contract).

The defendant cites two cases which state the law of anticipatory breach in New York. *Didier v. MacFadden Publications*, 299 N.Y. 49, 85 N.E.2d 612 (1949), the court held that the party suing for breach must show an absolute repudiation by language or act "making it futile for him to proceed." In *Gittlitz v. Lewis*, 28 Misc.2d 712, 212 N.Y.S.2d 219 (Sup.Ct.1961), it was held that the defendant's renunciation must be an "unqualified and positive refusal to perform and must go to the whole of the contract." The plaintiffs did not dispute this statement of the law of anticipatory breach at the hearing.

■ Thus, the issue here is whether the language in the two letters demonstrates an absolute and unambiguous repudiation of the contract by Allyn & Bacon. The letters themselves appear clear and unmistakable on their face. The language does not raise a genuine issue of material fact. (Plaintiffs in their Memorandum of Law in Support of Summary Judgment, p. 3, concede that the "letters speak for themselves.")

While the court acknowledges that Allyn & Bacon did try to discourage the plaintiffs from continuing with it as a publisher, it cannot conclude that the letters amounted to an absolute repudiation, making it futile for the authors to proceed. The April 1974 letter sought to discourage and persuade the plaintiffs to find another publisher. The language in the April 1975 letter is stronger. Although Allyn & Bacon did state it would be able to give "Vanity Press" type treatment, the court cannot conclude it was futile for the authors to proceed.

■ Moreover, the court finds that the plaintiffs' acts did not constitute substantial performance of the contract on their part. The assembly and final completion of the manuscript were not merely technical acts to be performed.

Judgment for the defendant on each count of the complaint.